**Betty W. RYAN, a feme sole, Appellant,**

**v.**

**Sharon Ann HARDIN, a minor, Appellee.**

No. 11980.

Court of Civil Appeals of Texas, Austin.

April 18, 1973.

Rehearing Denied June 6, 1973.

**346**

Bob Roberts, Byrd, Davis, Eisenberg & Clark, Austin, for appellant.

Milton L. Bankston and JoAnne Christian, Stubbeman, McRae, Sealy, Laughlin & Browder, Austin, for appellee.

O'QUINN, Justice.

Appellant, Betty W. Ryan, brought this lawsuit against appellee, Sharon Ann Hardin, for personal injuries sustained by appellant in an automobile collision at a street intersection in Austin in June of 1970.

Upon a jury verdict, finding issues of negligence and proximate cause against appellee and finding all issues of damages, except loss of earnings in the past, for appellant, the trial court entered judgment for appellant awarding damages in the sum of $6,853.28.

The jury failed to find that appellant had suffered any loss of earnings in the past, but found that she would sustain loss of earning capacity in the future in the amount of $1,500. Appellant moved for judgment *non obstante veredicto* and urged the court to render judgment "according to the uncontroverted evidence and add the uncontroverted amount for the past lost earnings."

The trial court overruled appellant's motion for judgment, as well as a motion for mistrial, and appellant thereafter filed a motion for new trial, complaining of the overruling of these motions, subsequent to entry of judgment. At a hearing on the motion for new trial appellant presented a bill of exceptions, which was approved with modifications. Appellant perfected her appeal after new trial was denied.

Appellant brings four points of error under which she takes the position that the jury's finding of no loss of past earnings was not supported by the evidence and was induced by improper argument of appellee's counsel. Appellant urges this Court to render judgment for an amount of wages lost in the past which she contends was shown by uncontroverted testimony.

We will overrule appellant's points of error and affirm the judgment of the trial court.

The jury failed to find that appellant should be compensated in any amount for loss of earnings in the past. The pertinent portion of Special Issue 7, on the subject of past earnings, and the jury's answer were:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Plaintiff, Betty W. Ryan, for her injuries, if any, which you find from a preponderance of the evidence resulted from the occurrence in question?

"Answer separately in dollars and cents, if any, with respect to each of the following elements:

\* \* \* \* \* \*

"c. Loss of earnings, if any, in the past.

"Answer: –0–"

Appellant's position, as stated in her brief is:

"There are two separate questions which this Court must answer in order to reach justice in this case. First, it must be determined whether the jury's answer of 'zero' to the part of Special Issue Number Seven inquiring about past lost earnings was manifestly unjust. Second, this Court must look at why the jury answered the issue that way, and what is the proper remedy to the plaintiff in this kind of situation."

Appellant answers the first question by argument that the jury's answer "is manifestly wrong and unjust." Appellant's answer to the second question is that the jury failed to award damages for loss of past earnings ". . . due to intentional, improper argument of counsel [for appellee], and the ONLY equitable remedy here is the rendition of judgment for the additional amount of the uncontroverted lost wages."

Counsel for appellee argued to the jury, "There is no evidence in this record of one dollar being lost by this lady as a result of these injuries and the time away from her job. There is no burden upon this Defendant to make proof of these facts. There is proof in this record of a period of time which she was not on the job. This is a suit for loss of past earnings and it is simple, if you are in a position where you are trying this case, to put the income tax return up there and prove how many dollars were actually lost as a result of the collision or accident in question."

Counsel for appellant at that point interposed objection to the argument, saying ". . . we object to that for the reason that it violates the motion we made before the trial.[1] We further object for the reason that Counsel was furnished with those income tax records and had them available to him for introduction and did not do so and for those reasons we ask the Court to sustain our objection and instruct the Jury not to consider for any purpose Counsel's last remark."

"With respect to the income tax?" the Court inquired. Counsel agreed. The Court then stated, "I will so instruct the Jury. You are the exclusive judges of the evidence and you will not consider the statement."

Counsel for appellee continued, "All right. It is not incumbent upon me to make proof of this fact in regard to loss of earnings. This is a burden that is upon the Plaintiff and whether or not proof of how long someone was or was not at the place of business proves dollars and cents doesn't make it as far as I am concerned."

In the course of arguing the several phases of Issue No. 7 as to damages counsel for appellee returned to loss of earnings in the past and stated, "I looked with interest at the lost earnings. You are going to have to guess your way to the proper verdict, which the Court has instructed you not to do, if you are going to guess and assume that there were lost wages. Assuming that you do, and though it changes throughout all day's session yesterday, I am willing to ride the last session of the day in which we reiterated when we were off and my figures differed from . . . [counsel for appellant]. I am

---

1. Reference was to a motion *in limine*, which the trial court granted, excluding testimony of "collateral source benefits" derived from appellant's brother-in-law, her employer, who continued to pay her salary without interruption after the accident.

not saying this is what you write down there as a figure, but I am saying that you can follow the evidence and, frankly, until one point I find very little difference."

Counsel for appellee at this point argued from notes he had made during the trial, suggesting figures he had estimated from the testimony of appellant, based on a salary of $675 per month and the time each month appellant believed she had missed from work. The figure counsel for appellee arrived at in this manner reached a total of $3,363.82.

Earlier, in oral argument, counsel for appellant had followed a similar procedure before the jury, and by way of summary argued, ". . . a total for the entire time that we say she lost of $4,097.25. Now, these are her lost wages if you calculate them according to the testimony we believe, ladies and gentlemen, $4,097.25."

Appellant urges on appeal that when ". . . the jury disregards the evidence as to an element of damages which is in the past, uncontroverted, definite and calculable by simple mathematics, the trial and appellate courts should fully rectify the injustice done. This is particularly true where the error was brought about by the intentional conduct of an experienced trial attorney."

Appellant in her brief argues, "From the uncontroverted testimony . . . [counsel for appellant] calculates the damages at at least $3,592.50 and *defense counsel* calculates them at $3,363.82, a figure as he indicated, he was willing to 'ride' . . ." (Emphasis by appellant.)

The estimated totals arrived at by counsel for each of the parties are not in agreement, and appellant's estimate in argument to the jury varies from the estimate argued on appeal by several hundred dollars. There was no stipulation as to an agreed sum which would compensate appellant for lost earnings in the past. The jury failed to find any amount for loss of past earnings. Yet appellant argues, "It only requires simple mathematics to determine the amount of salary payable for the times she [appellant] was entirely absent," and contends this Court should ". . . render the judgment the Trial Court should have rendered on the uncontroverted evidence."

■ This Court has no jurisdiction to determine originally a question of fact in a case on appeal. The provisions of the Constitution of Texas that judgments of courts of civil appeals shall be conclusive on the facts of a case have application only where jurisdiction of the intermediate court to pass on sufficiency of the evidence is invoked by appropriate assignments of error. Constitution, Art. V, sec. 6, Vernon's Ann.St.; Wisdom v. Smith, 146 Tex. 420, 209 S.W.2d 164, 166 (1948). As stated by the Supreme Court more recently, ". . . courts of civil appeals have no jurisdiction to make original findings of fact in cases on appeal; they can only 'unfind' facts." City of Beaumont v. Graham, 441 S.W.2d 829, 832 (Tex.Sup. 1969), citing *Wisdom* and 38 Texas L.Rev. 361, 368.

The record shows that counsel for appellant made no objection to the argument of counsel for appellee after the trial court sustained objection to the reference made to income tax returns and instructed the jury not to consider the statement. The argument of appellee's counsel clearly appears to have been made in response to the argument of appellant's counsel, in which counsel for appellant traced the testimony of appellant as to the time she believed she had lost in the months following the collision in which she sustained injury. Both arguments pursued a pattern of guessing, or estimating, the loss of time, in dollars and cents, based on a salary of $675 per month, applied to the days or hours appellant testified she was away from work.

Appellant testified that she did not have a "time card" and did not keep a diary of the time she was at work or away from work during the months following the col-

lision. Appellant stated that she did not "keep track of" the days and hours at work and that she "wouldn't even know how to guess" at the periods she was back at work. Finally, appellant was asked, "Now, all of these figures that you have just given us, as I recall, in response to my questions are guesses?" Appellant replied, "That is right."

Counsel for appellee argued to the jury that appellant had failed to prove loss of earnings and pointed out that the jury had been instructed not to arrive at its answers to the special issues by surmise or guess, but Appellant did not make timely objection to the argument, and complained for the first time after the verdict, in motions for judgment *non obstante veredicto,* for mistrial, and for a new trial.

▮ When appellant objected to the argument that income tax returns were not introduced, timely objection was made and the court instructed the jury not to consider the statement. The trial court's instruction eliminated the harmful effect of counsel's remarks. No objection was made to further argument that only by guess and surmise could the jury determine in dollars and cents what loss appellant had suffered in the past. The argument was not so inflammatory that its harmfulness could not have been eliminated by an instruction to the jury to disregard the statements. By failure to object, appellant waived the error, even if the argument could be regarded as improper. Otis Elevator Company v. Wood, 436 S.W.2d 324, 333 (Tex.Sup. 1968).

Appellant contends that the jury's answer to Special Issue 7(c), by which the jury failed to find any loss of earnings in the past, was supported by insufficient evidence and was against the great weight and preponderance of the evidence. The issue as submitted to the jury called for an answer in dollars and cents as to what sum of money would compensate appellant for *"Loss of earnings,* if any, in the past." (Emphasis added.) Appellant admitted in

her testimony that the days or hours she told the jury she missed from work were arrived at by guess, that she did not keep track of the time, and as to some of the lost time she would not know how to guess.

Appellee admits that although appellant "may have adduced sufficient evidence to have sustained a finding of loss of past earning capacity," the issue submitted called for actual loss of earnings, not loss in the past of capacity to earn. Consistent with this position taken in appellee's argument is the answer of the jury to Special Issue 7(d) that appellant should be compensated to the extent of $1,500 for *"loss of earning capacity . . .* in reasonable probability . . . in the future." (Emphasis added.) In this connection, appellant had testified that at the time of trial, as a result of her injuries, she was working fewer hours, leaving work two afternoons a week about two hours earlier than before the collision, and that at work she had trouble bending over or climbing steps and did not type as well as she used to.

Appellant had the burden of proving what loss of earnings she had suffered in the past as a result of the injuries she received in the collision. No records of the business firm by which appellant was employed were introduced to show hours or days missed from work after the collision. The principal evidence before the jury was the testimony of appellant who repeatedly stated that she could only guess as to how many hours or days she did not work in the months following her injury. Appellant pleaded that in the past she had "lost earnings and earning capacity as a result of this collision, in the sum of $6,000.00," and that in the future she would "incur annually $2,000.00 in lost earnings and earning capacity." As to the past, appellant went to the jury with a special issue that asked the jury to find in dollars and cents her loss of earnings, and as to the future, the jury was asked to find the extent of lost earning capacity. As to actual loss of earnings in the past, appellant may ·have

assumed a greater burden of proof than would have been required in showing loss of *capacity* in the past to earn. This possibility has support in the fact that the jury arrived at $1,500 as the measure of loss of earning capacity in the future.

Special Issue 7, calling for separate answers as to elements of damage, followed Texas Pattern Jury Charges No. 11.04 (volume 1, p. 249, State Bar of Texas, 1969), under which the jury may find "loss of earnings" in the past and "loss of earning capacity" in the future. The Committee on Pattern Jury Charges, in commenting on this form and on alternate form 11.-03, noted that for use of "loss of earning capacity in the past," instead of "loss of earnings" in the past, a guide is found in Greyhound Lines, Inc. v. Craig, 430 S.W. 2d 573, 575 (Tex.Civ.App. Houston 14th 1968, writ ref. n. r. e.). The court of civil appeals in that case approved an instruction by the trial court that the jury could consider "diminished capacity to work and labor" from the date of accident to the time of trial, and rejected the contention of appellant that the court should have inquired only as to *actual loss of time or earnings* for that period.

■ The record before us does not disclose that such an instruction was given by the court or that it was requested by appellant. The jury appears to have taken the inquiry literally and failed to find that appellant suffered any *actual* loss of earnings in the past. An instruction in the pattern of that given in Greyhound Lines, Inc. v. Craig would have permitted argument in behalf of appellant as to loss of capacity to earn in the past, which could have induced a different answer by the jury as to loss of past earnings. As pointed out in *Craig,* the fact that an employer continues to pay the plaintiff after injury, so that no actual loss of earnings is suffered, is immaterial insofar as plaintiff's right of recovery is concerned, since loss or diminution of power or earning capacity is the ultimtae issue.

(430 S.W.2d 575) See, also, Green v. Rudsenske, 320 S.W.2d 228, 236 (Tex.Civ. App. San Antonio 1959, no writ); Bonney v. San Antonio Transit Company, 160 Tex. 11, 325 S.W.2d 117, 121 (1959); Southwestern Freight Lines v. McConnell, 254 S.W.2d 422, 424-425 (Tex.Civ.App. El Paso 1952, writ ref.).

■ The trial court gave a standard instruction to the jury in warning against "any answer or surmise, suspicion or conjecture," and to that added, "Remember that you cannot guess your way to a just and correct verdict." Bearing in mind the testimony of appellant that her account of days and hours missed from work in the months following the collision was based on guess and not on records, the jury apparently heeded the argument of appellee that a verdict in dollars and cents, as to actual earnings lost in the past, would be of necessity only a guess. In the exercise of its prerogative to determine the credibility of any witness and the weight to be given the witness' testimony, the jury arrived at an answer we are without authority to overturn.

■ We have examined and considered the entire record, and from this review we are unable to find that the answer of the jury was so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust or clearly wrong. Hulsey v. Drake, 457 S.W.2d 453, 460 (Tex.Civ.App. Austin 1970, writ ref. n. r. e.). If the special issue had inquired as to loss of capacity to earn in the past, or if the issue which was submitted had been accompanied by an instruction to consider diminution of power or capacity to earn in arriving at lost earnings in the past, the result we have reached might not be the same.

The judgment of the trial court is affirmed.

Affirmed.